IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:25-cv-356

| | | |
|---|---|---|
| AMBER GALLEGOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| AMAZON.COM SERVICES, LLC | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

1. Amber Gallegos ("Plaintiff" or "Amber") began working for Amazon.com Services, LLC ("Defendant" or the "Company") in or around August 2020. In or around October 2022, Amber began to be sexually harassed by a 3rd party truck driver at her work location. The driver repeatedly asked Amber for sexual favors and made numerous unwanted advances towards her. In one instance, the driver nearly sexually assaulted her.

2. Amber reported this all to her managers. After numerous requests, the Company moved her to a different area to avoid harassment. However, this did nothing to deter her harasser. He sexually assaulted Amber at work in a vehicle the day before she was slated to begin her new role.

3. Amber again reported the assault to her direct manager, who implored her that it was her last day in that department so "it didn't matter." After Amber started her new role working inside the building, the harasser started stalking and following her. This lead to her

1

filing a complaint with HR. After several reports, Amber suggested a Police report and HR implored her to keep the situation "in-house." Shortly after that, they told Amber that the HR boss wanted her to stop making reports about this incident. The Company terminated Amber's employment shortly thereafter, under the pretext that she was not allowed to record a safety demonstration on her phone.

4. Amber now turns to this Court to be made whole for her harms and losses. Amber brings this action against the Company for violations of Title VII of the Civil Rights Act of 1964 (Count I) and Wrongful Discharge in Violation of North Carolina Public Policy (Count II).

## II. PARTIES, JURISDICTION AND VENUE

5. Plaintiff resides in York County, South Carolina.

6. Amazon.com Services, LLC is a company incorporated in Delaware with its principal office in Seattle, Washington. Its North Carolina registered office is located at 2626 Glenwood Ave. Ste. 550 Raleigh, NC 27608.

7. Venue is proper in the Western District of North Carolina, Charlotte Division, because: Amazon.com Services, LLC has a substantial presence in Charlotte, North Carolina and conducts a great deal of business in Charlotte. At all relevant times, Plaintiff worked out of the 10240 Old Dowd Road, Charlotte, North Carolina 28214 location. Moreover, the facts and circumstances of the case arise in Charlotte, North Carolina. But for Defendant's illegal conduct, Plaintiff would have continued working in Charlotte, North Carolina.

## III. FACTUAL STATEMENT

8. In or around August 2020, Amber began working for the Company as a Fulfillment Associate.

9. Due to her good work, in or around September 2021, the Company promoted Amber to work with the Transportation Team as a Transportation Associate.

10. On or around October 3, 2022, Ishmael (last name unknown), a third-party truck driver, began sexually harassing Amber. The harassment began with inappropriate flirting and gifts. Amber made clear she was not interested in Ishmael's gifts or flirtations.

11. After Amber rejected Ishmael's initial advances, his harassment became more severe. He tried touching Amber's shoulders, arms, and breasts. Ishmael would not relent, even when Amber backed away and asked him to stop.

12. In or around December 2022, Amber reported Ishmael's sexual harassment and assault to the night shift Transportation Area Managers, Brian Strait and Gavin (last name unknown). Amber reported that Ishmael was sexually harassing her and wouldn't listen to her repeatedly instructions to stop. Amber told them in detail that Ishmael tried to kiss her and then forced himself on her. Strait and Gavin expressed sympathy, but said they didn't want to get involved.

13. Ishmael continued to sexually harass Amber. She had to continue working with him on a regular basis. When the two were alone, Ishmael would proposition Amber for sex and touch her inappropriately. On at least two occasions, Ishmael touched her breasts at work against her will. Amber had to physically fight Ishmael off to get him to stop assaulting her.

14. Amber continued to report the harassment throughout the ordeal. The Company

3

Case 3:25-cv-00356-MOC-SCR     Document 1     Filed 05/29/25     Page 3 of 10

continued to do nothing beyond telling her to keep her distance from Ishmael. Amber tried to explain it would be impossible for her to do her job without interacting with him, but her complaints fell on deaf ears.

15. In or around April 2023, the Company finally agreed to move Amber to a different shift to get away from Ishmael.

16. On or around April 14, 2023, Amber worked her last day on the Transportation Operations Management team. Ishmael approached her and said that, since it was Amber's last day and he may not see her again, she should show him her vagina. Amber refused. Ishmael then offered Amber $1,000 to show her genitals. She again refused.

17. Ishmael wouldn't take no for an answer. He forced himself on Amber. A struggle ensued, and Amber had to hit Ishmael to get him off of her. She blared the car horn twice. Security never showed up.

18. After getting Ishmael off of her, Amber left and immediately went to her manager, Zane, and reported the assault and even played a recording of Ishmael offering her money to show him her vagina. After hearing Amber's report and listening to her clear evidence, Zane told Amber it would be best to sweep the assault under the rug because it was her last day in the department.

19. On or around April 19, 2023, Amber began her new role as Onsite Medical Representative.

20. When she met with her new manager, Amber reported Ishmael's assault. She told Amber to report the incident to HR and write a statement. Amber then submitted a report, along with a written witness statement. Amber included past instances of Ishmael's sexual

4

harassment and assault in this report, as well as prior reports to management.

21. Shortly after, Ishmael sought out and confronted Amber. He was irate over Amber reporting his sexual assaults and recording him. Amber broached the idea of filing a police report against Ishmael. HR, however, told her to keep the situation "in-house."

22. On or around May 6, 2023, Amber recorded a short video on her phone of a workplace safety demonstration for future reference. This was not unheard of—many of Amber's co-workers and managers also openly recorded the demonstration.

23. On or around May 11, 2023, HR called Gallegos into a meeting and threatened to terminate her. HR claimed this was due to her recording the May 6 safety demonstration. Amber admitted she recorded a part of the training for her own reference. She told them she had no idea it was wrong to record the demonstration. Amber quickly deleted the recording from her phone and informed HR she had done so.

24. Following Amber's meeting with HR, her Operations Manager, Richard Barbee, offered his support. He said he didn't know that recording a demonstration would violate Company policy.

25. But an Area Manager, Emanuel (last name unknown) warned Amber about her future with the Company. He believed the recording would be used as a pretext to terminate her employment over her complaints regarding Ishmael.

26. On or around May 17, 2023, Barbee and Corey (last name unknown) from HR called Amber and terminated her employment. The Company claimed that her violation, recording a safety demonstration, merited an automatic termination. When Amber called the ethics department and the GSoC (Global Security Operations Center), they both said that Amber

5

should not have been fired, especially since she was within 90 days of her new position.

27. The Company's alleged reason is pretext for unlawful discrimination and retaliation. It fired Amber because she reported sexual harassment and threatened going to the police.

28. On September 20, 2023, Amber filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") through counsel.

29. On March 19, 2025, the EEOC issued Amber her right to sue letter.

## IV. LEGAL CLAIMS

### Count I
(*Violation of Title VII of the Civil Rights Act of 1964*)

30. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

31. Plaintiff is, and at all relevant times was, an employee covered by the protections of Title VII of the Civil Rights Act of 1964 ("Title VII") as defined in 42 U.S.C. § 2000e(f).

32. Defendants have had more than fifteen (15) employees at all relevant times.

33. Defendant is, and at all relevant times was, an employer as defined in 42 U.S.C. § 2000e(b).

34. Title VII prohibits discrimination based on sex.

35. Defendant violated Title VII by subjecting Plaintiff to a hostile work environment based upon her sex.

36. Plaintiff engaged in protected activity when she complained about Ishmael's sexual harassment to management and human resources.

37. Defendant further violated Title VII by terminating her employment in retaliation for

her protected activities.

38. Defendant also violated Title VII by terminating Plaintiff's employment on the basis of her sex.

39. As an an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

40. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **Count II**
### *(Wrongful Discharge in Violation of Public Policy)*

41. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

42. Plaintiff was an at-will employee of Defendant.

43. Defendant employed at least fifteen (15) employees at all relevant times.

44. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of race, religion, color, national origin, age, sex or handicap.

45. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because of her sex.

46. A discharge based on sexual harassment offends the public policy of North Carolina and may properly support a wrongful discharge claim in violation of public policy. Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 37, 598 S.E.2d 151, 155 (2004), rev'd on other grounds, 359 N.C. 625, 614 S.E.2d 531 (2005) (citing *Guthrie v. Conroy*, 152 N.C. App. 15, 19, 567 S.E.2d 403, 407 (2002); *Russell v. Buchanan*, 129 N.C. App. 519, 521, 500 S.E.2d 728, 730 (1998); *Harrison v. Edison Bros. Apparel Stores*, 924 F.2d 530, 534 (4th Cir. 1991) (holding that North Carolina's public policy wrongful discharge doctrine was applicable to prohibit sexual harassment); *Townsend v. Shook*, 323 F. App'x 245, 251 (4th Cir. 2009); *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 721 (4th Cir. 2003); *Phillips v. J.P. Stevens & Co., Inc.*, 827 F. Supp. 349, 352–53 (M.D.N.C.1993) (recognizing wrongful discharge claim in violation of public policy on the basis of sexual harassment)). Defendant violated NC Public Policy by firing Plaintiff based on sexual harassment.

47. The public policy of North Carolina also prohibits prostitution or any similar requirement to engage in sexual activity as a part of one's employment. *See* NCGS 14-205.1. The public policy of the State of North Carolina prohibits an employer from terminating an employee for refusing to accede to sexual advances. *Id.; Harrison v. Edison Bros. Apparel Stores*, 924 F.2d 530, 534 (4th Cir. 1991).

48. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because she refused the above-alleged sexual advances.

49. Terminating an employee for threatening to contact the police also violates North

8

Case 3:25-cv-00356-MOC-SCR    Document 1    Filed 05/29/25    Page 8 of 10

Carolina public policy as set forth in N.C.G.S. § 95-260, N.C.G.S. § 14-33, and N.C.G.S § 14-277.1.

50. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in her earning capacity, severe emotional distress, damage to her reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed.

51. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment again Defendant and order the Defendant to pay Plaintiff back pay, front pay, and compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq*.

3. Award Plaintiff punitive damages pursuant to 42 U.S.C. § 1981a *et seq*.

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 29th day of May, 2025.

/s/ Sean F. Herrmann
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Ave, Suite 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*